## PAXTON *v.* GRISWOLD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued May 5, 6, 1887.—Decided May 27, 1887.

In Pennsylvania a private survey cannot be received in evidence for the purpose of making out a title from the proprietaries, even though it may have been referred to in other surveys; and parol and circumstantial evidence is inadmissible to establish such a survey.

The non-return of a survey to the land office in Pennsylvania for one hundred and thirty years is proof of abandonment.

The rules adopted in the land office in Pennsylvania in 1765 made no alteration as to returns of surveys, which before that date, were required to be returned to the land office, in order that it might appear by the records of that office what lands were alienated, and what not.

In Pennsylvania, unless a survey is returned to the land office in a reasonable time, which time has been fixed by the courts of that state at seven years, it is regarded as abandoned.

EJECTMENT. Verdict for plaintiffs, and judgment on the verdict. Defendants sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Samuel Hepburn, Jr.,* for plaintiffs in error, cited: *McKinzie* v. *Crow,* 2 Binney, 105; *Lanman* v. *Thomas,* 4 Binney, 51, 59; *Boyles* v. *Johnston,* 6 Binney, 125; *Lilly* v. *Paschal,* 2 S. & R. 394, 398; *Watson* v. *Gilday,* 11 S. & R. 337, 340; *Biddle* v. *Dougal,* 5 Binney, 142, 152; *Boyles* v. *Kelley,* 10 S. & R. 214; *Gonzalus* v. *Hoover,* 6 S. & R. 118, 125.

*Mr. Samuel Hepburn,* (with whom was *Mr. James Ryan* on the brief,) for defendants in error, cited: *Moch* v. *Astley,* 13 S. & R. 382; *McMurtrie* v. *McCormich,* 3 Penn. (P. & W.) 428, 431; *Roland* v. *Long,* 13 Penn. St. 464; *Emery* v. *Spencer,* 23 Penn. St. 271; *Manhattan Coal Co.* v. *Green,* 73 Penn. St. 310; *Strauch* v. *Shoemaker,* 1 W. & S. 166; *Keller* v. *Nutz,* 5 S. & R. 246; *Chambers* v. *Mifflin,* 1 Penn. (P. & W.) 74; *Addleman* v. *Masterson,* 1 Penn. (P. & W.) 454; *Star* v.

*Bradford*, 2 Penn. (P. & W.) 384; *Steinmitz* v. *Logan*, 5 Watts, 518; *McGowan* v. *Ahl*, 53 Penn. St. 84; *Woods* v. *Galbreath*, 2 Yeates, 306; *Barton* v. *Smith*, 1 Rawle, 403; *McKinzie* v. *Crow*, 2 Binney, 105; *Allen* v. *Lyons*, 2 Wash. C. C. 475; *Urket* v. *Coryell*, 5 W. & S. 60; *Phillips* v. *Zerbe Run Co.*, 25 Penn. St. 56; *Morrow* v. *Brenizer*, 2 Rawle, 185; *Allison* v. *Wilson*, 13 S. & R. 330; *Craig* v. *Leslie*, 3 Wheat. 563; *Garver* v. *McNulty*, 39 Penn. St. 473; *Blair* v. *McKee*, 6 S. & R. 193.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action of ejectment for 405 acres of land in Cumberland County, Pennsylvania, brought by the heirs-at-law of John Griswold, the defendants in error, against George W. Paxton and others, plaintiffs in error, to which the defendants below pleaded not guilty. The cause was tried at Philadelphia before Judge McKennan, and the jury, by direction of the court, found a verdict for the plaintiffs below, and judgment was entered accordingly. That judgment is now before us for review. The questions of law in the case arise upon a bill of exceptions taken at the trial, which shows the following proceedings. The plaintiffs, besides showing by certain depositions, that they were the heirs-at-law of John Griswold, adduced in evidence, 1st, a warrant granted to him, dated May 23, 1848, for 400 acres of land, adjoining lands surveyed to other persons named, situate in the townships of Dickinson and South Middleton, in the county of Cumberland, acknowledging payment for the same to the treasurer of the commonwealth; 2dly, a survey made on said warrant, dated December 26, 1853, containing 405 acres 138 perches, returned into the land office; 3dly, a patent to John Griswold for the said land, describing the same according to the plot of the survey; 4thly, the writ of ejectment issued in the cause, for the purpose of proving that the defendants were in possession of the land claimed in the writ.

The defendants then made the following offer: A. Warrant to Thomas Cookson, dated 26th August, 1751; B. Certificate

of payment of purchase money by Cookson on 27th August, 1751.

They also offered to prove that a survey was actually made immediately after the date of the warrant and 1264 acres located upon it.

That this location and survey was known to the proprietaries, and recognized and approved by their officers.

That a subsequent warrant was issued by the proprietaries, calling for this location in favor of Cookson.

That this land was assessed for taxes in 1765, in 1770, and subsequently.

That the same land was conveyed by different deeds and by various legal proceedings down to the year 1846, when it vested in Geisse and Kropff, who mortgaged it to the Farmers' and Mechanics' Bank of Philadelphia, to secure part of the purchase money.

That the land was sold on the mortgage on 13th November, 1849, purchased by the said bank, and by them conveyed to the defendants and those under whom they claim.

That Griswold, under whom plaintiffs claim, was a clerk in the employ of Geisse and Kropff, and made an application in 1848 for this land, and therein set out that it was for the use of Geisse and Kropff.

That Griswold left the state immediately after that date, 1848, and never returned, and the title by return of survey and by patent was completed by the defendants in the name of Griswold, because it was the custom of the land officer at that day to issue the patent in the name of the applicant, Griswold having died in 1860.

This offer was objected to by the plaintiffs, on the following grounds, to wit: That no survey was ever made upon it by any proof that is adduced before this court in any shape or form by any official; that the offer does not propose to show an official survey, or survey made by direction of the proprietaries; that any other survey is immaterial and irrelevant in this case; that finding lines of an old survey upon the ground does not prove that they are made by official authority, or that they were any more than trespasses upon the land of

the proprietaries; that such a survey unreturned gives no right to a warrantee under the proprietaries claiming land by virtue of a warrant issued under the proprietary system; that under the act of 1784 no more than four hundred acres could be surveyed upon one warrant, and that a survey made prior to the act of 1779 was never returned into the land department. Conceding that they had the right to perfect their title under the act of assembly, they could not have surveyed or patented under that survey more than 400 acres.

Further, that the defendants cannot set up an equitable title in this action.

The court admitted A and B; the rest of the offer was rejected.

For the rejection of the rest of their offer, the defendants excepted.

The defendants then put in evidence (A) the warrant to Thomas Cookson, which was as follows:

## A.

By the Proprietaries. Pennsylvania, *ss :*

Whereas Thomas Cookson, of the county of Cumberland, hath requested that we would grant him to take up one hundred and fifty acres of land on a branch of Yellow Breeches, in the said county of Cumberland, for which he agrees to pay to our use at the rate of fifteen pounds ten shillings, current money of this Province, for one hundred acres, and the yearly quit-rent of one half-penny sterling for every acre thereof:

These are, therefore, to authorize and require you to survey, or cause to be surveyed, unto the said Thomas Cookson, at the place aforesaid, according to the method of townships appointed, the said quantity of 150 acres, if not already surveyed or appropriated, and make return thereof into the secretary's office in order for further confirmation, for which this shall be your sufficient warrant. Which survey, in case the said Thomas Cookson fulfil the above agreement within six months from the date hereof, shall be valid; otherwise void.

Given under my hand and the seal of the land office, by virtue of certain powers from the said proprietaries, at Phila-.

delphia, this twenty-sixth day of August, anno Domini one thousand seven hundred and fifty-one.

JAMES HAMILTON.  [Seal.]

To Nicholas Scull, surveyor general.

The defendants also put in evidence (B) the following evidence of payment of purchase money by Cookson, to wit :

B.

*(Certified extract from Ledger of Department of Internal Affairs of Pennsylvania.)*

Thomas Cookson, Dr.

1751.

Aug.  27.  44. To land (2 W. S.) on Yellow Breeches
creek. . . . . . . . . . . . . .                43

1874.

Aug.  21.  216 a's 31 p's pat. to the Mt. Holly Paper
Co., at vo. . . . . . . . . . . .              86119

*Contra* Cumberland, Cr.

1751.

Aug.  27.  44. By cash ten pounds & £7 10 . . . 54 £17 10

This being all the evidence in the case, the court, as before stated, charged the jury to find a verdict for the plaintiffs for the land embraced in the warrant, survey, and patent given in evidence in their behalf ; to which instruction the defendants excepted.

It will be perceived that the case turned upon the failure of the defendants to show that any official survey had ever been made under the vague and indescriptive warrant granted to Thomas Cookson, or that any survey had ever been returned to the land office.  Their offer did not propose proof of any such survey or return, and they contended, both at the trial and in this court, that no such proof was necessary under warrants granted prior to 1765, provided they could prove, by any means whatever, that an actual survey had been made by somebody, and that it was known to, and recognized by the proprietaries, in the manner stated in the offer.

It is admitted that no case precisely in point can be found in the books; but it is argued by the counsel of the defendants, that their title may be supported by the course of practice pursued by the proprietaries with regard to titles in the Province in the early part of last century.

We have examined with some diligence the Pennsylvania reports, especially the cases cited by the counsel for the plaintiffs in error, to see if we could find any support for his position, and we have been unable to do so. We can find no case in which a private survey has been received as having any efficacy in making out a title, even though it may have been referred to in other surveys. All the cases have reference to official surveys. Parol and circumstantial evidence have been received to establish them, and no others.

The conclusive objection, however, to the title set up by the plaintiffs in error, is the fact that no survey has ever been returned to the land office, though more than one hundred and thirty years have elapsed since the alleged survey was made. And, indeed, none could ever have been returned if the survey was a private one. This great lapse of time, without any return, and without occupation of the lands, is proof of abandonment. If taxes were paid on them, it was more than a hundred years ago. Passing of deeds from one hand to another, and even recording them, can have no effect on the question. It seems to us that the case is covered by the decision in *Conkling et al.* v. *Westbrook*, 81 Penn. St. (32 P. F. Smith) 81. In that case, the defendants set up title in part of the lands under a descriptive warrant to one Kellam, dated in 1793, but no survey made or returned until 1851, a lapse of fifty-eight years; and for another part, they claimed under an indescriptive application of one Shaler, made in 1768, but no survey made or returned on it until 1851, a lapse of over eighty years. Evidence was offered by the defendants to show that Kellam had claimed to be owner of the lands for thirty years, and had exercised acts of ownership by cutting timber on them; that the lands were assessed to him on the assessment list from 1842, and he paid taxes thereon; that the lines of the Kellam tract had marks as far back as seventy years,

and those of the Shaler tract as far back as forty years; but there was no evidence to show who made the marks, or that a deputy surveyor ever made an official survey of either tract, until 1851. The court held that the defendants and those under whom they claimed having for so long a time neglected to have these surveys made and returned, and the plaintiff's title having in the meantime intervened, the law presumed an abandonment; and the court directed the jury to find a verdict for the plaintiff. The Supreme Court of Pennsylvania unanimously sustained this ruling.

It will be observed that the inception of one of these titles went back to 1768. The counsel for the plaintiffs in error contends, however, that a great change took place in the rules and practice of the land office in 1765, and that the case of *Conkling* v. *Westbrook* does not rule the present case, because the title of his clients originated in 1751, before the establishment of the new rules, and not subject to them. But an examination of the rules adopted in 1765 shows that they related principally to the adoption of a new mode of procuring titles, by a simple application, without a warrant, and without payment until the survey was returned; but they made no alteration in the practice of requiring returns of surveys, though they established new sanctions for the enforcement thereof. It had always been the rule that surveys should be returned to the land office, in order that it might appear by the records of that office what lands were alienated and what not. And although indulgence was exercised towards those who had procured their lands to be regularly surveyed and had paid for them, and they were held to have title from the time of such survey, and even from the time of their warrants when descriptive, so as to maintain ejectment thereon; yet, as against the proprietaries, and, after them, the state, the title was only an equitable one. The duty of having the surveys returned was always the same; and the manifest inconvenience of outstanding secret titles led the courts, in process of time, under the influence of certain statutes passed after the Revolutionary war, and the manifest dictates of public policy and convenience, to adopt a rule that a survey

would be regarded as abandoned unless returned in a reasonable time. This reasonable time was finally fixed at seven years. In *Chambers* v. *Mifflin*, 1 Penn. (P. & W.) 74, 78, where the warrant was dated in April, 1763, and therefore prior to the new rules of 1765, and where the survey was not returned until 1797, the Supreme Court of Pennslvania, by Huston, Justice, said: "The doctrine of our courts has not been well understood, for when it is said, a precisely descriptive warrant gives title from its date, a vague one from the time of survey, &c., it is sometimes added, and always understood, *provided it is otherwise followed up with reasonable attention.* It is not, and never was the law, that on taking out a warrant, and procuring a survey, and then neglecting or refusing to pay the surveyor's fees, which was always necessary to procure a return, that a man could hold the land without attending to it in any way for an indefinite length of time. Although a warrant has been surveyed, yet if not returned, the owner may change its lines, or change its place altogether and lay it on any other vacant land anywhere near; until it is returned, the state has no power to collect arrears of purchase money. It never can be that a man can wait thirty or forty years, and all that time be able to say, this is my land if I please, and not mine unless I please." The court adds: "We have full and ample provision on this subject by our legislature. The act of 9th April, 1781, for establishing a land office, provides, in § 9, that all surveys heretofore made shall be returned into the Surveyor General's office within nine months, and prescribes a penalty on any deputy surveyor, to whom his fees shall be paid, who neglects to return." This continued till 5th April, 1782, when it was enacted, "It shall be lawful for the Surveyor General of this state to receive returns of such surveys, as shall appear to him to have been faithfully and regularly made, from the said late deputy surveyors, their heirs or legal representatives, for such further period, as to him shall seem just and reasonable." After citing other acts passed in 1785, relating to surveys under the act of 1784, but showing the sense of the legislature on the necessity of a return of survey in due time, and the evils incident on neglect in this par-

ticular, the judge proceeds: "Then came the act of 4th September, 1793, which provides that 'all returns of surveys which have been actually executed since the 4th July, 1776, by deputy surveyors, while they acted under legal appointments, shall be received in the land office, although the said deputy surveyors may happen not to be in office at the time of the return or returns being made: provided *that no returns be admitted, that were made by deputy surveyors, who have been more than nine years out of office.*' This short law is in some respects obscure when closely examined, but it further shows strongly the sense of the legislature on the subject of keeping titles in this uncertain and unfinished state. It lays down a rule which is not easily gotten over by the courts. Independent of this law, who will say that the act of 1782, which allows returns to be received till such period as the Surveyor General shall deem just and reasonable, would keep the office open forever? I am aware that there are cases where plaintiffs have recovered on surveys not returned since 1793. They will, however, be found very special cases, where the owner has proved great exertions on his part to procure returns, and fraud or accident in preventing them. I am also aware that the owners of many tracts, who have taken possession and occupied them, or transmitted them to their descendants, have found no returns in the office. In such cases the land officers issue orders and have returns made yet, and rightly, for no injury is done to any one. So, if land has been surveyed, and no adverse claimant, as improver, or by warrant, has any claim to the land, returns are received, and may be received, from the present deputy surveyors; but where, as in the present case, a vague or removed warrant has been surveyed, and then neglected thirty years, or even a less time, and no excuse shown, it was not within a 'just and reasonable time' to receive the return, after another had bought and paid for it, as derelict." This case was decided in 1829.

The principles of this case were followed up in the subsequent cases of *Addleman* v. *Masterson*, 1 Penn. (P. & W.) 454; *Star* v. *Bradford*, 2 Penn. (P. & W.) 384, 393; and *Strauch* v. *Shoemaker*, 1 W. & S. 166. In the last case a "just

and reasonable time" for the return of a survey was settled at seven years, as had been suggested in the previous case of *Star* v. *Bradford*.

We think that these authorities reach the present case, notwithstanding the inception of title took place prior to the year 1765, and that the decision of the Circuit Court was right; and it is, therefore,

*Affirmed.*